**ARCHER & GREINER**
A Professional Corporation
1025 Laurel Oak Road
Voorhees, NJ 08043
(856) 795-2121
Attorneys for Plaintiff

BY:  ROBERT T. EGAN, ESQUIRE
       AMY E. PEARL, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SAN CHENG,**<br><br>   **Plaintiff,**<br><br>vs.<br><br>**KARMA THEGSUM CHOLING (NEW JERSEY), INC.**<br><br>   **Defendant.** | **Civil Action No.** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff, San Cheng, by way of Complaint against Defendant, Karma Thegsum Choling (New Jersey), Inc. ("KTC-NJ") alleges as follows:

### NATURE OF THE ACTION

  1. Plaintiff, San Cheng ("Cheng"), brings this action to redress KTC-NJ's intentional infringement of Cheng's copyright in a logo (hereinafter the "Cheng Logo" as that term is defined in Paragraph 21 of this Complaint) and KTC-NJ's misappropriation of the Cheng Logo and other related items and services that Cheng provided to KTC-NJ.

  2. At KTC-NJ's request, Cheng created and delivered a Corporate Identity System ("CIS") to promote the "brand" of the Karma Kagyu Tibetan Buddhist Center that KTC-NJ has

1

owned and operated in Shamong, New Jersey since at least 2001. The CIS included a logo, trademark, a website, and various related items. After over two years of work developing the CIS, during which time Cheng sought an agreement from KTC-NJ that would permit it to use the logo and related items, KTC-NJ told Cheng that it was not going to use any of the items in the CIS, including the logo, and would not furnish such an agreement.

3.  Cheng then moved to the People's Republic of China, where he spent approximately twelve years, during the last three of which he was imprisoned. Approximately a year after he returned to the United States, Cheng discovered that, contrary to KTC-NJ's earlier representations, it had in fact used the logo that he had designed to create a substantially similar and infringing logo. KTC-NJ used the infringing logo in many ways, including on its website and on items that Cheng had designed and included in the CIS that he had delivered to KTC-NJ.

4.  KTC-NJ rejected Cheng's subsequent demands to stop using the infringing logo and the other items that Cheng had designed and to compensate Cheng for his design work and the items that he delivered, requiring Cheng to file this lawsuit.

5.  Cheng therefore seeks all remedies afforded by the Copyright Act and common law, including permanent injunctive relief, Cheng's damages and KTC-NJ's profits from its infringing conduct, and other monetary relief.

**PARTIES**

6.  Cheng is an individual who resides in Mt. Laurel, New Jersey.

7.  KTC-NJ is a non-profit corporation that is incorporated in New Jersey with a principal place of business at 690 Atsion Road, Shamong, New Jersey 08088. KTC-NJ has owned and operated a Karma Kagyu Tibetan Buddhist Center at that location since 2001.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and pursuant to principles of supplemental jurisdiction under 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1400(a) because KTC-NJ is a resident of this district.  Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

**FACTS COMMON TO ALL COUNTS**

10. Cheng is a successful Taiwanese American inventor and graphic artist who has been in the business of developing branding campaigns for blockbuster motion pictures since 1991, which involves, among other things, creating original works of authorship such as posters and logo designs.

11. KTC-NJ had just been established in approximately 2001 and was interested in attracting new members and obtaining donations.

12. In or around June 2001, Cheng was approached by KTC-NJ representatives on the recommendation of a member of the Tibetan Buddhist community who was aware of Cheng's work and who suggested that KTC-NJ reach out to him to develop a marketing package for KTC-NJ.

13. KTC-NJ asked Cheng to create a Corporate Identity System to develop and promote the "brand" of the Center, the centerpiece and essential element of which would be a logo that would be featured on KTC-NJ's trademark, brochures, letterhead, donation cards, invitations, business cards, membership applications, and a website, all of which would be part of the CIS that Cheng would design, develop, and produce.

14. Typically, Cheng would have charged approximately $600,000 for the work that he then anticipated would be necessary to complete a project of that nature.

15. Cheng told KTC-NJ that he would develop the CIS on the condition that its use and KTC-NJ's rights would be limited and, if terms could be reached, Cheng would consider donating all or a portion of his fees to KTC-NJ.

16. KTC-NJ agreed to provide Cheng with a draft written agreement that would propose the terms upon which KTC-NJ could reproduce, adapt, distribute, or otherwise display and use the elements of the CIS that Cheng would develop, including the logo, and, if agreed upon, memorialize Cheng's engagement.

**Cheng Begins Work on a Corporate Identity System for KTC-NJ**

17. Because KTC-NJ agreed to that arrangement, and in reliance upon KTC-NJ's promise to provide the draft written agreement, Cheng began designing the CIS for KTC-NJ, with a particular focus on creating a logo.

18. To do so, Cheng researched relevant Buddhist history and relied on his research to identify a "story" and tie it to the KTC-NJ brand that Cheng would develop. In the process, he identified certain ancient symbols of traditional Buddhism that signified particular ideas and themes that were material to Buddhist beliefs, philosophies, and history.

19. Cheng worked extensively on the project, including devoting substantial time to developing an original logo that would be the symbolic centerpiece of the CIS that KTC-NJ could use.

20. As part of the design process, Cheng first sketched certain elements of the logo on paper, then hand drew them and additional elements on a computer using graphic design software which, in turn, saved the design to an electronic file on the computer.

4

**Cheng Completes the Logo and Certain Other Items and KTC-NJ Displays Them at Selected Events**

21. Cheng completed his design of the logo in October or November 2001, and delivered the following logo design in three color variations ("Cheng Logo") to KTC-NJ in data files on electronic media:







22. The Cheng Logo consists of Cheng's representation of certain Buddhist symbols that he identified during his research, and certain unique additional elements that Cheng created independent of the ancient symbols, with the elements combined and arranged to create a single logo.

23. Cheng's also delivered to KTC-NJ data files on electronic media that contained several other original works that comprised the CIS package. Some of those works incorporated the Cheng Logo, including:









24. In approximately November 2001, KTC-NJ held an "opening or "open house" event at its Center in Shamong, at which it entertained potential members and donors who would

possibly become involved in activities at the Center and also purchase items and services from KTC-NJ and/or donate to KTC-NJ.

25. In 2002, KTC-NJ conducted approximately three or four "prayer events" at the Center.

26. Expecting KTC-NJ to provide a draft written agreement to propose the terms upon which KTC-NJ could display and use the items in the CIS package, including the logo, Cheng agreed to allow KTC-NJ to temporarily use the Cheng Logo and certain items in his CIS package in connection with the "open house" event and "prayer events."

27. KTC-NJ displayed the Cheng Logo and distributed other works that were in the CIS that Cheng had delivered and that KTC-NJ had printed, without further modification, many of which were seen and/or obtained by the people who attended the "open house" event and "prayer events."

**Cheng Continues His Work on the Project and Attempts to Memorialize a Written Agreement Until KTC-NJ Rejects his Work and Vows Not to Use it**

28. After the "open house," Cheng continued to work on the items comprising the CIS and delivered to KTC-NJ new items or updated versions of items he had previously provided.

29. Cheng periodically showed his work on a computer screen to Nai Hsiao, an employee of KTC-NJ, who repeatedly asked Cheng to make changes to the items he was then creating, including the logo, a donation card, brochure, invitation cards, and KTC's first website layout.

30. Cheng spent many hours making the requested changes and showed the resulting adjusted draft items to Hsiao on a computer, who typically made additional requests for changes.

9

31. However, Cheng retained ultimate control of his designs, and did not incorporate any of Hsiao's suggestions into his design of the logo or into the design of most of the other items he created and delivered to KTC-NJ. He never delivered a logo other than the Cheng Logo to KTC-NJ or to any other person or entity.

32. The Cheng Logo was the only logo that Cheng incorporated into any item that he delivered to KTC-NJ.

33. Cheng continued to press KTC-NJ for a draft written agreement to address the scope and terms of KTC-NJ's permitted use of the CIS, including the Cheng Logo, and the nature of his compensation. He was repeatedly told that a draft would be forthcoming.

34. Eventually, in the summer of 2004, Hsiao told Cheng that KTC-NJ did not have an attorney who would draft a written agreement, that KTC-NJ would not provide him with a written agreement, and that KTC-NJ would no longer use his logo or any of the designs or items that he had delivered. At that point, Cheng's attempts to reach an agreement and resolve the terms under which KTC-NJ would use the designs or items that he had delivered, including his possible donation, became moot.

**Cheng Pursues Other Ventures**

35. After KTC-NJ informed Cheng that it would not use his logo or any of the designs or items that he had delivered, Cheng moved to San Francisco, California to earn a master's degree and returned to the film industry.

36. Cheng lived in San Francisco until 2008, when he relocated to the People's Republic of China.

37. Cheng spent the next nine years working in the gaming industry.

38. In 2017, Cheng was arrested for buying toy guns, which he intended to use as models for his work creating first-person video shooting games, on Alibaba's Taobao shopping site. He was imprisoned in the People's Republic of China for approximately three years.

**Cheng Returns to New Jersey and Discovers KTC-NJ's Infringement**

39. Cheng returned to the United States from the People's Republic of China in 2020, and relocated to a KTC monastery in Princeton, where Cheng's mother – a longtime Buddhist and KTC volunteer – lived.

40. Cheng and his family moved out of the monastery to Mt. Laurel, New Jersey in October 2021. When they were unpacking their belongings in Mt. Laurel, Cheng found a KTC-NJ magazine that appeared to have been published in 2006 that contained a logo, shown in the upper part of the left-hand page in the picture below (the "Infringing Logo"), which is virtually identical to the Cheng Logo:



41. The Infringing Logo was created by substantially copying the Cheng Logo.

42. The structural similarity between the Cheng Logo and the Infringing Logo demonstrates that the Infringing Logo was created by starting with and then modifying the data on the data file containing the Cheng Logo that was on the electronic media that Cheng had delivered to KTC-NJ in October or November 2001.

43. The copying and alteration of the Cheng Logo was without his authorization, consent, or knowledge, and without any remuneration to Cheng.

44. On information and belief, agents, servants, employees or contractors of KTC-NJ created the Infringing Logo and incorporated it into various publications and documents that KTC-NJ displayed and/or distributed.

45. After discovering the aforesaid KTC-NJ magazine, Cheng learned that KTC-NJ had incorporated the Infringing Logo into other materials, including its letterhead, posters, and other items that it distributed to others, including the items depicted below:







46. After discovering the aforesaid KTC-NJ magazine, Cheng also learned that KTC-NJ had displayed the Infringing Logo on its website at https://www.ktcnj.org/en/ (last accessed on August 10, 2023) beginning at a point in time unknown to Cheng and continuing to at least August 10, 2023.

47. KTC-NJ has distributed materials containing the Infringing Logo to solicit donations and obtain new members.

48. The use, copying, modification, and reproduction of the Cheng Logo and the use, distribution, and display of the Infringing Logo as aforesaid were without Cheng's authorization, consent, or advance knowledge, and without any remuneration to Cheng.

49. The use, copying, modification, and reproduction of the Cheng Logo and the use, distribution, and display of the Infringing Logo as aforesaid infringed Cheng's rights under the Copyright Act.

50. Upon learning of KTC-NJ's infringement, through legal counsel, Cheng registered items that were included in the CIS package, including the Cheng Logo, (collectively the "Copyrighted Work") with the United States Copyright Office.

51. Cheng is the owner of valid and subsisting United States Copyright Registration No. VA0002284325 for his Copyrighted Work, which includes the Cheng Logo, issued by the United States Copyright office on November 23, 2021.

**KTC-NJ Ignores Cheng's Demand to Cease and Desist its Use of His Work**

52. By failing to obtain Cheng's authorization to use the CIS, including the Cheng Logo, or to compensate Cheng for the use, KTC-NJ has avoided payment of license fees and other financial costs associated with the development of or obtaining permission to exploit the CIS, as well as the restrictions that Cheng is entitled to and would place on any such exploitation as conditions for Cheng's permission, including the right to deny permission altogether.

53. On January 5, 2022, Cheng's legal counsel sent a cease and desist letter to KTC-NJ objecting to KTC-NJ's unauthorized use, alteration, dissemination, and infringement of Cheng's Copyrighted Work, including the Infringing Logo.

54. To date, KTC-NJ has not complied with the demands set forth in Cheng's attorney's January 5, 2022 cease and desist letter and continues to use the Infringing Logo.

55. As a result of KTC-NJ's actions described above, Cheng has been directly damaged and continues to be damaged by the unauthorized reproduction, distribution, and display of the Infringing Logo.

56. KTC-NJ has never accounted to or otherwise compensated Cheng for its use of the items comprising the CIS that Cheng created and delivered to KTC-NJ, including the Cheng Logo.

57. KTC-NJ's acts are causing and will continue to cause, unless restrained, damage and immediate irreparable harm to Cheng for which he has no adequate remedy at law.

## COUNT I
## Copyright Infringement under 17 U.S.C. § 101, *et seq.*

58. Cheng repeats the allegations of the foregoing paragraphs as if set forth at length.

59. The Copyrighted Work, including the Cheng Logo, is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et seq.*

60. Cheng is the exclusive owner of rights under copyright in and to the Copyrighted Work, including the Cheng Logo.

61. Cheng owns a valid copyright registration for the Copyrighted Work.

62. KTC-NJ copied the Cheng Logo without Cheng's authorization, consent, or knowledge, and without any remuneration to Cheng.

15

63. Through KTC-NJ's conduct alleged herein, including its copying, reproduction, distribution, and display of the Infringing Logo without Cheng's permission, KTC-NJ has directly infringed Cheng's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

64. On information and belief, KTC-NJ's infringing conduct alleged herein was and continues to be willful and with full knowledge of Cheng's rights in the Copyrighted Work, and has enabled KTC-NJ to obtain profit therefrom.

65. As a direct and proximate result of KTC-NJ's infringing conduct alleged herein, Cheng has been harmed and is entitled to damages in an amount to be proven at trial.

66. Pursuant to 17 U.S.C. § 504(b), Cheng is also entitled to recovery of KTC-NJ's profits attributable to KTC-NJ's infringing conduct alleged herein.

67. Alternatively, Cheng is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000 for KTC-NJ's infringing conduct and for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

68. Cheng is further entitled to his attorneys' fees and costs pursuant to 17 U.S.C. § 505.

69. As a direct and proximate result of KTC-NJ's infringing conduct alleged herein, Cheng has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

70. Unless KTC-NJ's infringing conduct is enjoined by this Court, KTC-NJ will continue to infringe the Copyrighted Work, including the Cheng Logo.

71. Cheng is therefore entitled to permanent injunctive relief restraining and enjoining KTC-NJ's ongoing infringing conduct.

## COUNT II
### Unjust Enrichment

72. Cheng repeats the allegations of the foregoing paragraphs as if set forth at length.

73. Cheng conferred a benefit on KTC-NJ in creating the CIS.

74. Cheng conferred that benefit with a reasonable expectation that KTC-NJ would compensate Cheng for it.

75. That benefit was conferred under circumstances that should have put KTC-NJ on notice that Cheng expected compensation.

76. KTC-NJ has retained the benefit without adequately compensating Cheng.

77. Consequently, KTC-NJ has been unjustly enriched.

78. As a result, Cheng is entitled to the reasonable value of the benefit conferred upon KTC-NJ in an amount to be determined at trial.

## COUNT III
### Quantum Meruit

79. Cheng repeats the allegations of the foregoing paragraphs as if set forth at length.

80. Cheng provided goods to and performed services for to KTC-NJ in good faith.

81. KTC-NJ accepted those goods and services.

82. Cheng provided those goods and services with a reasonable expectation that KTC-NJ would compensate Cheng for them, under circumstances that should have put KTC-NJ on notice that Cheng expected compensation.

83. As a result, Cheng is entitled to the reasonable value of the goods and services he provided to KTC-NJ in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Cheng respectfully requests entry of judgment against KTC-NJ as follows:

1. That KTC-NJ has willfully infringed Cheng's Copyrighted Work, including the Cheng Logo;

2. Granting a permanent injunction enjoining KTC-NJ, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

(a) Distributing, displaying, or authorizing any third party to distribute or displaying the Infringing Logo and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Logo;

(b) Reproducing, distributing, or publicly displaying the Cheng Logo, creating any derivative works based on the Cheng Logo, or engaging in any activity that infringes Cheng's rights in the Cheng Logo; and

(c) aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) or (b).

3. That KTC-NJ be ordered to provide an accounting of its profits attributable to its infringing conduct, including any profits from sales of the Infringing Logo and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Cheng Logo.

4. That KTC-NJ be ordered to destroy or deliver up for destruction all materials in its possession, custody, or control used by KTC-NJ in connection with its infringing conduct, including without limitation all remaining copies of the Infringing Logo and any products and works that embody any reproduction or other copy or colorable imitation of the Cheng Logo, as well as all means for manufacturing them.

5. That KTC-NJ, at its own expense, be ordered to recall the Infringing Logo from any distributors, retailers, vendors, or others that have distributed the Infringing Logo on KTC-NJ's behalf, and any products, works or other materials that include, copy, are derived from, or otherwise embody the Infringing Logo or the Cheng Logo, and that KTC-NJ be ordered to destroy or deliver up for destruction all materials returned to it.

6. Awarding Cheng:

(a) KTC-NJ's profits obtained as a result of its infringing conduct, including but not limited to all profits from sales and other exploitation of the Infringing Logo and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Infringing Logo or the Cheng Logo, or in the Court's discretion, such amount as the Court finds to be just and proper;

(b) damages sustained by Cheng as a result of KTC-NJ's infringing conduct, in an amount to be proven at trial;

(c) should Cheng so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits;

(d) damages in the amount of the reasonable value of the benefit he conferred upon KTC-NJ;

(e) damages in the amount of the reasonable value of the goods and services he provided to KTC-NJ; and

(f) Cheng's reasonable attorneys' fees and costs.

7. Awarding Cheng interest, including pre-judgment and post-judgment interest, on the foregoing sums.

8. Awarding such other and further relief as the Court deems just and proper.

19

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a jury trial on all issues triable as of right to a jury.

ARCHER & GREINER
A Professional Corporation
Attorney for Plaintiff

By: */s/ Robert T. Egan*
    ROBERT T. EGAN
Dated:  August 10, 2023    AMY E. PEARL

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I, ROBERT T. EGAN, ESQUIRE, hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

*/s/ Robert T. Egan*
ROBERT T. EGAN

Dated:  August 10, 2023

227585850 v1